**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Kinnear Rd. Redevelopment, L.L.C. v. Testa,* **Slip Opinion No. 2017-Ohio-8816.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8816

KINNEAR ROAD REDEVELOPMENT, L.L.C., APPELLEE, *v.* TESTA, TAX COMMR., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Kinnear Rd. Redevelopment, L.L.C. v. Testa,* **Slip Opinion No. 2017-Ohio-8816.]**

*Taxation—Real property—Exemptions—R.C.5709.87—Exemption for increase in*
*value of real property subject to environmental cleanup—Exemption*
*applies both to increase in value of land and to increase in value of*
*improvements, buildings, fixtures, or structures situated on the land that*
*were newly constructed after remediation.*

(No. 2015-0976―Submitted October 17, 2017―Decided December 6, 2017.)

APPEAL from the Board of Tax Appeals, No. 2013-1407.

_____

**Per Curiam.**

## I. SUMMARY

{¶ 1} This case concerns a partial tax exemption under R.C. 5709.87 for real property that has undergone or is undergoing environmental cleanup. The exemption—commonly referred to as the "brownfield exemption"—encourages developers to remediate properties contaminated with hazardous materials by granting a ten-year exemption from taxation of the increased value of the property resulting from the cleanup. *See* R.C. 5709.87(C)(1)(a).

{¶ 2} Appellee, Kinnear Road Redevelopment, L.L.C. ("Kinnear"), owned the property in question until it was transferred to Lennox Flats Apartments, L.L.C., on December 20, 2013. On the January 1, 2012 tax-lien date, the property had an assessed value of $478,000. The land was vacant at that time, so the assessed value was composed solely of land value. Kinnear remediated the property and improved it with apartment buildings in 2012. On January 1, 2013, the assessed value of the land had increased to $874,000. As for the newly built apartments, the auditor assessed their value at $4,076,000.

{¶ 3} On March 25, 2013, appellant, the tax commissioner, granted an exemption of $396,000 for the increase in the assessed value of the land. The tax commissioner, however, found that the apartment buildings did not qualify for an exemption under R.C. 5709.87.

{¶ 4} Kinnear appealed to the Board of Tax Appeals ("BTA"). The BTA reversed the tax commissioner's determination, finding that Kinnear was entitled to a tax exemption for the assessed value of the apartment buildings under R.C. 5709.87.

{¶ 5} The tax commissioner challenges the BTA's decision on appeal, raising one proposition of law consisting of several arguments. The tax commissioner has waived his main argument and one other issue by failing to raise

them first at the BTA.  The remaining arguments lack merit.  Therefore, we affirm the BTA's order.

## II. FACTS AND PROCEDURAL HISTORY

### A. Remediation, New Construction, and EPA Certification

{¶ 6} The property is a 2.39-acre parcel located on Kinnear Road in Franklin County, identified as parcel number 420-290066.  From 1965 to 2007, the property was used for the manufacture and repair of industrial magnets, and chemicals from the manufacturing process contaminated the soil and groundwater.

{¶ 7} In 2012, Kinnear undertook action to remove the hazardous materials from the soil and groundwater and redevelop the land with residential apartments.  Both the remediation and the construction of the apartments were completed in 2012.

{¶ 8} On February 26, 2013, the director of the Ohio Environmental Protection Agency ("EPA") issued a covenant not to sue pursuant to R.C. 3746.12, verifying that Kinnear had remediated the land in compliance with applicable environmental standards and releasing Kinnear from civil liability.  On the same day, the EPA director certified the covenant not to sue to the tax commissioner for further action relating to the exemption, as required by R.C. 5709.87(B).

{¶ 9} The following chart reflects the auditor's assessed increase in value from the January 1, 2012 tax-lien date (before remediation and construction) to the January 1, 2013 tax-lien date (after remediation and construction):

*January 1, 2012 Tax-Lien Date*

| | |
|---|---|
| Land: | $478,000 |
| Building/Improvements: | $0 |
| Total: | $478,000 |

*January 1, 2013 Tax-Lien Date*

| | |
|---|---|
| Land: | $874,000 |

| | |
|---|---|
| Building/Improvements: | *$4,076,000* |
| Total: | $4,950,000 |

**B. Tax Proceedings**

{¶ 10} R.C. 5709.87(C)(1)(a) provides for a tax exemption of "the increase in the assessed value of land constituting property that is described in the certification" of the covenant not to sue. Upon receipt of the certification, the tax commissioner issued a final determination on March 25, 2013, granting Kinnear a ten-year tax exemption for the land that was subject to remediation. The amount of the exemption for the 2013 tax year was $396,000.

{¶ 11} R.C. 5709.87(C)(1)(a) also allows a tax exemption for "the increase in the assessed value of improvements, buildings, fixtures, and structures that are situated on that [remediated] land on the tax lien date of the year in which the remedial activities began." But at all times relevant to this case, this latter exemption was limited to those improvements, buildings, fixtures, and structures that were "situated on that land at the time the [tax commissioner's exemption] order is issued as indicated on the current tax lists." Former R.C. 5709.87(C)(1)(a), 151 Ohio Laws, Part V, 8511. The tax commissioner, however, refused to grant Kinnear an exemption for the apartment buildings constructed in 2012, which the auditor had valued at $4,076,000 as of the January 1, 2013 tax-lien date. According to the tax commissioner, the exemption under R.C. 5709.87 did not apply to "any new improvements, buildings, fixtures and structures added to the property after January 1, 2012."

{¶ 12} Kinnear appealed to the BTA, challenging the tax commissioner's refusal to include the increased value of the apartment buildings in the exemption. The BTA reversed the tax commissioner's determination, finding that Kinnear was entitled to an exemption for the assessed value of the apartment buildings under the plain language of R.C. 5709.87. According to the BTA, the phrase "situated on

4

that land at the time the order is issued" plainly allows an exemption for improvements added after the prior year's tax-lien date (here January 1, 2012). The BTA determined that the apartment buildings qualified for the tax exemption because they were (1) situated on the land when the tax commissioner issued his order on March 25, 2013, and (2) listed on the current (2013) tax list.

{¶ 13} Thereafter, the tax commissioner appealed to this court.

### III. DISCUSSION

#### A. Standard of Review

{¶ 14} This court must affirm the BTA's decision if it was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino*, 90 Ohio St.3d 496, 497, 739 N.E.2d 783 (2001). In making this determination, we must consider legal issues de novo. *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, ¶ 10-11. But we defer to the BTA's findings concerning the weight of the evidence so long as they are supported by the record. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 27.

#### B. Analysis

{¶ 15} The tax commissioner raises a single proposition of law with two subparts, each containing several arguments. As mentioned previously, two of these arguments have been waived. As to the remaining arguments, the tax commissioner fails to demonstrate reversible error on appeal. Therefore, we affirm the BTA's decision.

**1. Issue presented: Whether the tax exemption under R.C. 5709.87 is limited to land and real-property improvements that were the subject of a voluntary cleanup action under R.C. Chapter 3746**

{¶ 16} The tax commissioner first argues that the plain meaning of the relevant statutes limits the scope of the tax exemption and thereby defeats Kinnear's exemption claim. The tax commissioner also argues, in the alternative, that any

doubts about the applicability of the tax exemption should be strictly construed against the exemption claim.  The tax commissioner raises several arguments in conjunction with each claim.  We address the arguments out of order for ease of discussion.

*a. Should the tax exemption under R.C. 5709.87 be construed strictly against the taxpayer?*

{¶ 17} The tax commissioner argues that the statutory language of R.C. 5709.87 should be resolved strictly against Kinnear's exemption claim.  The tax commissioner states that because the onus is on the taxpayer to establish the exemption, this court is required to resolve any doubt concerning the law and the facts by narrowly construing R.C. 5709.87 against the claim of exemption.  And according to the commissioner, doubt is created by R.C. 5709.88, the very next statute in the Revised Code chapter, which the commissioner claims applies to Kinnear's exemption claim.  The tax commissioner's theory is that Kinnear cannot obtain a tax exemption for its apartment buildings under R.C. 5709.87, because the General Assembly separately enacted R.C. 5709.88 to apply to *newly constructed* real-property improvements.  This argument fails for the following reasons.

{¶ 18} First, the tax commissioner points to no language in R.C. 5709.88 to support his claim and cites no other relevant legal authority.  This alone suffices to invalidate the argument.  *See Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 39.

{¶ 19} Second, the plain language of former R.C. 5709.87(C)(1)(a) does not support the tax commissioner.  The former version of this statute stated:

> Upon receipt by the tax commissioner of a certification for property under division (B) of this section, the commissioner shall issue an order granting an exemption from real property taxation of the increase in the assessed value of land constituting property that

is described in the certification, *and* of the increase in the assessed value of improvements, buildings, fixtures, and structures situated on that land at the time the order is issued as indicated on the current tax lists.

(Emphasis added.) 151 Ohio Laws, Part V, 8511.

{¶ 20} This provision separates the components of real property that qualify for the tax exemption into two distinct categories: one for "land constituting property" and a second for "improvements, buildings, fixtures, and structures." Under the first category, a property owner would be entitled to an exemption based on the increase in the assessed value of "land constituting property that is described in the [EPA's] certification." Under the second category, the property owner can also exempt "improvements, buildings, fixtures, and structures" from taxation, the only criteria being that the improvement be "situated on that land [described in the EPA certification] at the time the order is issued as indicated on the current tax list." Nothing in R.C. 5709.87, however, can be read to exclude improvements from exemption merely because they did not exist during remediation.

{¶ 21} R.C. 5709.87 is unambiguous and must be applied as written, and there is no need to construe the language strictly against Kinnear's exemption claim. *Newfield Publications, Inc. v. Tracy*, 87 Ohio St.3d 150, 153, 718 N.E.2d 420 (1999) ("We read exemption statutes strictly, * * * but we will not require more qualifications for an exemption than the General Assembly does"). In the end, the plain language of R.C. 5709.87(C)(1)(a) supports the BTA's decision here. Therefore, we reject the tax commissioner's argument that the exemption should be strictly construed against Kinnear.

*b. Did the BTA err in finding that the apartment buildings increased in assessed value?*

{¶ 22} The tax commissioner also argues that the BTA's determination "violate[s] the plain meaning of the phrase 'increase in the assessed value of improvements' " as set forth in R.C. 5709.87(C)(1)(a). According to the tax commissioner, the apartment buildings did not undergo any "increase" in "assessed value" before the 2013 tax year, because the buildings came into existence only after January 1, 2012. As the tax commissioner sees it, there could be no "increase in the assessed value" of the apartment buildings under a proper reading of that phrase, because the buildings were nonexistent and thus had no value to assess on January 1, 2012 (the prior year's tax-lien date).

{¶ 23} Under R.C. 5709.87(C)(1)(a), the amount of the tax exemption is determined by "the increase in the assessed value of land constituting property" and "the increase in the assessed value of improvements, buildings, fixtures, and structures." In this case, the BTA calculated the exemption for improvements by comparing the assessed value of the improvements as of January 1, 2012 (referred to as the base value) and the value of the improvements on March 25, 2013—the date of the tax commissioner's order—as required by R.C. 5709.87(C)(1)(a).

{¶ 24} As to the tax commissioner's claim that the apartment buildings had no assessed value on January 1, 2012, this is not an accurate statement. The tax commissioner overlooks the fact that his counsel stipulated that the Franklin County auditor had certified that the assessed value for "[i]mprovements" on the January 1, 2012 tax-lien date was zero dollars. And as Kinnear aptly notes, zero is a numeric value that can increase. To be sure, counsel could have stipulated that there was no assessed value for improvements in 2012 or even that there were no improvements to be valued in 2012. But because counsel stipulated to a "$0" value, the tax commissioner is now precluded from arguing that the apartment buildings has no assessed value for the 2012 tax year.

*c. Does* Columbus City School Dist. Bd. of Edn. v. Wilkins *support the tax commissioner?*

{¶ 25} The tax commissioner argues that the BTA's decision to grant the exemption for the newly constructed apartments is contrary to *Columbus City School Dist. Bd. of Edn. v. Wilkins*, 101 Ohio St.3d 112, 2004-Ohio-296, 802 N.E.2d 637. The tax commissioner maintains that *Columbus City School Dist.* held that only real-property improvements already in existence during the environmental cleanup qualify for the tax exemption under R.C. 5709.87. Because Kinnear's apartment buildings were constructed after remediation took place, the tax commissioner asserts that *Columbus City School Dist.* dictates that the apartments are not entitled to exemption under R.C. 5709.87(C). We find that this argument has no merit.

{¶ 26} First, *Columbus City School Dist.* is not controlling, because the issue we confront here was not presented in that case. The issue in *Columbus City School Dist.* was whether the requested exemption applied to the increase in value of both the remediated land and the nonremedial improvements to property that included an already existing hotel. But the specific question raised here—whether buildings that were newly constructed after remediation qualify for the exemption under R.C. 5709.87—was not raised in *Columbus City School Dist.*

{¶ 27} Second, the reasoning of *Columbus City School Dist.* favors Kinnear. In that case, both the tax commissioner and the BTA had found that the exemption under R.C. 5709.87 included the increase in value of the property stemming from both the environmental remediation and the nonremedial improvements. *Columbus City School Dist.*, 101 Ohio St.3d 112, 2004-Ohio-296, 802 N.E.2d 637, at ¶ 9-11. On appeal, the board of education argued that the tax exemption in R.C. 5709.87 applied only to increases in value tied directly to the environmental remediation. *Id.* at ¶ 23, 3-6. The tax commissioner overlooks this court's express rejection of that argument. We held that the exemption under R.C.

5709.87 is not limited solely to property that was subject to environmental remediation: "There is no language in R.C. 5709.87 that would limit the exemption to the increase in value of the specific item of property that was subject to environmental remediation." *Id.* at ¶ 34.

{¶ 28} Finally, the tax commissioner maintains that *Columbus City School Dist.* expressly refutes the BTA's holding that R.C. 5709.87 allows a taxpayer to exempt newly constructed improvements to land as long as they are situated on the land at the time of the tax commissioner's exemption order. The tax commissioner cites *Columbus City School Dist.* at ¶ 34, in which the court held that "R.C. 5709.87 would not exempt the assessed value of improvements, buildings, fixtures, or structures added after January first of the current tax year." This paragraph does not help the tax commissioner in this case, because Kinnear's apartments were added before January 1 of the current tax year.

*d. Does the definition of "property" in R.C. 3746.01(M) limit the scope of the tax exemption under R.C. 5709.87?*

{¶ 29} The tax commissioner also argues that Kinnear's apartment buildings cannot qualify for the exemption under R.C. 5709.87, because they do not meet the definition of "property" in R.C. 3746.01(M).

(1) The tax commissioner has waived his argument on the definition of "property"

{¶ 30} As Kinnear argues, this issue has been waived because the tax commissioner did not make this argument to the BTA. *The Chapel v. Testa*, 129 Ohio St.3d 21, 2011-Ohio-545, 950 N.E.2d 142, ¶ 26-27; *Oak View Properties, L.L.C. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 478, 2016-Ohio-786, 58 N.E.3d 1133, ¶ 9.

(2) The tax commissioner's arguments that waiver does not apply are not well taken

{¶ 31} On reply, the tax commissioner disputes that he waived his property-definition argument. After review, we find that the commissioner's counterarguments are not persuasive.

{¶ 32} First, the tax commissioner does not claim that he raised this argument before the BTA. Instead, the tax commissioner asserts that he was not required to present the issue to the BTA, because this court's case law "directly refute[s]" Kinnear's waiver claim. The commissioner cites *Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals*, 27 Ohio St.2d 255, 272 N.E.2d 359 (1971), for the proposition that the "specific statutory exemption criteria imposed by the General Assembly cannot be 'waived' by the Tax Commissioner or by this Court." The tax commissioner's reliance on this case is unavailing. We held in *Toledo Business* that the General Assembly has the exclusive power to decide what property is exempt from taxation and to establish the criteria for exemption. *Id.* at paragraph one of the syllabus. But we did not even imply, let alone hold, that the tax commissioner can never waive a particular reason for denying an exemption by failing to raise it in his final determination or before the BTA.

{¶ 33} Second, in a related argument, the tax commissioner claims that " 'ignorance of the law' is no excuse, [and] Kinnear is charged with knowledge of the express requirements of statutory exemptions enacted by the General Assembly, regardless of whether or not the Commissioner expressly advises Kinnear of those criteria in his briefing or otherwise." As the tax commissioner sees it, this principle means that waiver does not apply, because Kinnear cannot claim to have relied to its detriment on the commissioner's failure to notify Kinnear that it had to establish its apartment buildings as qualifying property under R.C. 3746.01(M) and 5709.87. We disagree.

{¶ 34} While "taxpayers are charged with a knowledge of the law, they are not charged with knowledge of what theory of liability the tax commissioner is relying upon, apart from being informed of that theory by the commissioner himself." *Krehnbrink v. Testa*, 148 Ohio St.3d 129, 2016-Ohio-3391, 69 N.E.3d 656, at ¶ 24. As a result of his omission, the tax commissioner, not Kinnear, is bound by waiver. *The Chapel*, 129 Ohio St.3d 21, 2011-Ohio-545, 950 N.E.2d 142, ¶ 28.

{¶ 35} Finally, the tax commissioner points out that his brief was not filed until after the BTA hearing, and he claims that it was Kinnear's responsibility to develop the factual record at the BTA to refute the tax commissioner's final determination. But the issue raised by the commissioner here—whether the statutory definition of "property" limits the scope of the exemption under R.C. 5709.87—is a question of law, not fact. So Kinnear's alleged failure to develop a factual record on this issue is immaterial.

{¶ 36} In sum, by failing to mention this issue at the BTA, the tax commissioner failed to put Kinnear on notice of his reliance on this basis for denying the exemption and thereby waived the argument. *The Chapel* at ¶ 27-28. Therefore, we disregard this argument as a basis for granting relief to the tax commissioner on appeal.

*e. Does R.C. 5709.87(C)(1)(a) exempt only the "improvements, buildings, fixtures, and structures" that are described in the EPA's certification?*

{¶ 37} The tax commissioner argues that to be exempt from taxation under R.C. 5709.87(C)(1)(a), the property must be described in the EPA's certification of the covenant not to sue. *See* R.C. 5709.87(B) (requiring the EPA director to certify to the tax commissioner the covenant not to sue, which certification shall include a description of the property). The tax commissioner also waived this argument when he failed to raise the issue before the BTA. Therefore, the commissioner cannot

possibly show error in the BTA's decision. *See The Chapel* at ¶ 26-27; *Oak View Properties*, 146 Ohio St.3d 478, 2016-Ohio-786, 58 N.E.3d 1133, at ¶ 9.

### IV. CONCLUSION

{¶ 38} For the foregoing reasons, we reject the tax commissioner's contentions on appeal and affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Dinsmore & Shohl, L.L.P., Brian C. Close, and Alan H. Abes, for appellee.

Michael DeWine, Attorney General, and Sophia Hussain and Barton A. Hubbard, Assistant Attorneys General, for appellant.

_____